IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARCO ANTONIO MUNIZ DE LA CERDA,<br><br>*Plaintiff,*<br><br>vs.<br><br>PAM BONDI, ATTORNEY GENERAL OF THE UNITED STATES; REYNALDO CASTRO, WARDEN, SOUTH TEXAS ICE PROCESSING CENTER; FIELD OFFICE DIRECTO SYLVESTER ORTEGA, FIELD OFFICE DIRECTOR, ICE; TODD M. LYONS, DIRECTOR, ICE; AND KRISTI NOEM, SECRETARY, DEPARTMENT OF HOMELAND SECURITY;<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 5:25-CV-01665-FB-RBF |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Petitioner Marco Antonio Muniz de la Cerda's Petition for Writ of Habeas Corpus, *see* Dkt. No. 1 ("Pet." or "Petition"), Motion for Temporary Restraining Order and Preliminary Injunction, *see* Dkt. No. 4, and Motions to Expedite, *see* Dkt. Nos. 6 & 14. Pretrial matters are referred for resolution, pursuant to Rule CV-72 and Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 3. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, the petition should be **GRANTED IN PART** and Petitioner should be released from Federal Respondents' custody under conditions of release substantially similar to conditions of his Order of Supervision. Any relief not recommended herein

should be **DENIED**. In light of the foregoing, and upon the District Judge's adoption of this recommendation, Petitioner's Motion for Temporary Restraining Order, Dkt. No. 4, and Motions to Expedite, Dkt. Nos. 6 & 14, should be **MOOT**.

### Factual and Procedural Background

Petitioner, a Mexican national, first entered the United States in 1974, when he was just 2 years old. Pet. ¶ 1. Petitioner was convicted of theft in 2001, felony drug possession in 2004, and illegal re-entry in 2013. Dkt. No. 11-1, ¶ 9 ("ERO Decl." or "Vasquez Declaration"). Petitioner entered, and presumably re-entered, the United States multiple times without inspection and on August 29, 2007, was ultimately ordered removed. *Id.* ¶ 6. In 2008, Petitioner was removed to Mexico. Pet. ¶ 15. Petitioner unlawfully re-entered the United States in 2010, and his removal was reinstated. ERO Decl. ¶ 6. But prior to his removal, Petitioner sought withholding of removal, claiming he feared for his life if he were returned to Mexico. *See* Pet. ¶¶ 1, 15. On November 18, 2015, an Immigration Judge granted Petitioner withholding of removal under the Convention Against Torture ("CAT"). *Id.* ¶¶ 1, 16; ERO Decl. ¶ 7.

Following his withholding of removal, on November 20, 2015, ICE released Petitioner under an Order of Supervision ("OSUP"), conditionally releasing him until his removal could be effectuated. Pet. ¶ 17; Dkt. No. 11 ("Response") at 2; ERO Decl. ¶ 8. For nearly a decade thereafter, Petitioner lived and worked in the United States while complying with the conditions of his OSUP. Pet. ¶¶ 17, 18; *see also* Dkt. No. 4 at 2. During this time, he married a U.S. citizen and started a family. Pet. ¶ 18.

On May 5, 2025, Immigration and Customs Enforcement ("ICE") officers in San Antonio, encountered Petitioner at Bexar County Adult Detention Center following his arrest for possession of a controlled substance. ERO Decl. ¶ 4. The charges were ultimately dropped. *See* Dkt. No. 13

("Tr.") 13:5-14. On or around June or early July of 2025,[1] ICE arrested and detained Petitioner at the Bexar County Adult Detention Center, presumably revoking Petitioner's OSUP, and taking him back into custody pending his removal from the United States. Response at 2; ERO Decl. ¶¶ 10, 11.

On December 5, 2025, approximately 7 months after his ICE encounter and approximately 5 months after ICE took Petitioner into custody, Petitioner filed this Petition for Writ of Habeas Corpus. *See* Pet. It alleges, *inter alia*, that his detention was and is unlawful, absent any indication that his removal will occur in the reasonably foreseeable future. *See generally id*. On December 30, 2025, the Court ordered Respondents to show cause and explain why the Petition should not be granted. *See* Dkt. No. 7. The Court also set the case for an Attorneys Only Status Conference, which was held on January 26, 2026, where Petitioner and the Federal Respondents appeared through counsel of record. *See id.*; *see also* Dkt. No. 12.

The Federal Respondents filed a Response to the Petition on January 23, 2026. *See* Response. Attached to the Response is a declaration from Sergio Vasquez, the Supervisory Detention and Deportation Officer for ICE Enforcement and Removal Operations ("ERO") for the South Texas Ice Processing Center. *See* ERO Decl. The Vasquez Declaration outlines the efforts Federal Respondents have taken to secure Petitioner's removal to a third country.

According to the Vasquez Declaration, on December 15, 2025, ICE submitted third-country removal requests to Brazil, Guatemala, and Colombia. ERO Decl. ¶ 16; *see also* Response at 2. As of January 23, 2026, none of the countries have responded to Federal Respondents'

---

[1] The date of Petitioner's detention is unclear. The Petition states that Petitioner has been "detained by ICE since June" 2025. Pet. ¶ 2. The Response states that Petitioner was taken into custody by DHS "[o]n July 4, 2025." Response at 2. And the Vasquez Declaration states that "[o]n July 3, 2025, ICE-ERO served [Petitioner]" forms in connection with his removal. ERO Decl. ¶¶ 10, 11.

inquiries. Tr. 2:18-3:14. The Vasquez Declaration also asserts that on December 17, 2025, after having detained Petitioner for over five months, ICE conducted an "initial informal interview with [Petitioner] to explain the reason for the revocation of his order of supervision."[2] ERO Decl. ¶ 12. The Vasquez Declaration states that at the initial informal interview, ICE explained to Petitioner that he "was deemed a threat to public safety due to his extensive criminal history." *Id.* ICE then also served him with "Notice to Alien of File Custody review, indicating that his custody status would be reviewed on or about December 24, 2025" and that he would remain detained pursuant to his final order of removal. *Id.* ¶ 13; *see also* Response at 2.

**Analysis**

Petitioner seeks immediate release and reinstatement of his OSUP. Petitioner does not challenge Federal Respondents' right to affect his removal. Rather, Petitioner argues he is entitled to relief on the following two grounds: (1) his detention violates 8 U.S.C. § 1231(a)(6) and due process because there is no indication he will be removed in the reasonably foreseeable future, *see Zadvydas v. Davis*, 533 U.S. 678 (2001), and (2) Respondents violated his right to procedural due process by failing to follow governing regulations, *see Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

**A.      The Court Has Jurisdiction to Address the *Zadvydas* Claim.**

Although Federal Respondents don't appear to contest the Court's jurisdiction, the Court addresses the topic *sua sponte*, as it must. In this regard, the Court begins (and ends) with the first of Petitioner's claims, which is his claim brought pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001). Although the Immigration Nationality Act curtails the jurisdiction of federal district courts, it does not bar federal district court consideration of habeas petitions challenging a petitioner's

---

[2] Petitioner maintains that he never received this informal interview. *See* Tr. 13:19-14:12.

indefinite detention following entry of a final order of removal. *See, e.g.*, *Zadvydas*, 533 U.S. at 688. Accordingly, the Court has jurisdiction to address Petitioner's challenge to the foreseeability of his removal following entry of a final order of removal. And because the Court ultimately recommends a grant of relief on this claim, there is no need to address jurisdiction over, or the merits of, the remaining claim for habeas relief.

> **B.    Petitioner's Removal is Not Reasonably Foreseeable.**

The limits on detention pending deportation, after an order of removal, are settled. "Once an alien is ordered removed, DHS must physically remove him from the United States within a 90-day 'removal period.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(A)). During the 90-day removal period, detention is mandatory. *See id.* (citing 8 U.S.C. § 1231(a)(2)). "Upon expiration of the removal period, the Government may continue to detain certain aliens or release them under conditions of supervision." *Abuelhawa v. Noem*, No. 4:25-cv-04128-CE, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) (citing 8 U.S.C. § 1231(a)(6)).

The 90-day removal period may be extended in at least three circumstances. *See Trejo v. Warden of ERO El Paso E. Montana*, 807 F.Supp.3d 697, 705 (W.D. Tex. 2025). Relevant here, an alien may be detained beyond the removal period if he is "(1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order." *Guzman Chavez*, 594 U.S. at 528-29 (citing *inter alia* 8 U.S.C. § 1231(a)(6)).

"The statute does not specify a time limit on how long DHS may detain an alien in the post-removal period." *Id.* at 529. But due process demands that the alien not be detained indefinitely. *See Zadvydas*, 533 U.S. at 697. Because "[a] statute permitting indefinite detention . . . would raise

a serious constitutional problem," the Supreme Court has "read an implicit limitation into the statute"—namely, that post-removal detention may not last longer than "reasonably necessary to bring about that alien's removal[.]" *See id.* at 689-90. Recognizing that not all reasonably foreseeable removals can be accomplished within the three-month removal period, the Court has generally held that such detentions are "presumptively reasonable" for up to "six months." *Id.* at 701. After that point, release is required if "there is no significant likelihood of removal in the reasonably foreseeable future." *Guzman Chavez*, 594 U.S. at 529 (quoting *Zadvydas*, 533 U.S. at 701).

   **1.** *Petitioner's statutorily prescribed, presumptively reasonable period of detention has expired.* To the extent Federal Respondents assert that Petitioner is lawfully detained either under the 90-day removal period or the presumptively reasonable six-month period, both contentions fail. When an alien "was previously detained, then released on supervised release, . . . his 90-day removal period has long expired." *See Balouch v. Bondi*, No. 9:25-cv-216-MJT, 2025 WL 2871914, at *2 (E.D. Tex. Oct. 9, 2025). And Petitioner was re-detained, at the latest, on or about early July of 2025. *See* Pet.; *see also* Response at 2. Even the presumptively reasonable six-month period has now expired.

   **2.** *Respondents must show it is likely Petitioner may be removed in the reasonably foreseeable future.* A discussion of burdens under *Zadvydas* is warranted.

  As an initial matter, an immigration detainee who brings a claim under *Zadvydas before* expiration of the presumptively reasonable six-month period must *prove* "there is no significant likelihood of removal in the reasonably foreseeable future[.]" *See Guzman Chavez*, 594 U.S. at 529 (citation omitted). But to make out a *Zadvydas* claim *after* the six months have run, a detained person need generally only "provide[] good reason to believe that there is no significant likelihood

of removal in the reasonably foreseeable future[.]" *Zadvydas*, 533 U.S. at 701. And if he does so, "the Government must respond with evidence sufficient to rebut that showing." *Id.*

These burdens shift, however, when the petitioner was re-detained based on revocation of an OSUP. "After *Zadvydas*, the immigration regulations were revised to implement administrative review procedures for those aliens detained beyond the removal period, *including those who are re-detained upon revocation of their* [OSUP]." *Escalante v. Noem*, No. 9:24-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) (emphasis added) (citations omitted). Under such circumstances, "the Service may revoke an alien's [OSUP] . . . and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Under this regulation, "it is [Respondents'] burden to show a significant likelihood that [Petitioner] may be removed." *See Escalante*, 2025 WL 2206113, at *3 (citing cases); *Balouch*, 2025 WL 2871914, at *2 (same); *see also, e.g.*, *Roble v. Bondi*, No. 25-cv-3196-LMP-LIB, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations . . . place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future.") (citations omitted); *J.L.R.P. v. Wofford*, No. 1:25-cv-01464-KES-SKO, 2025 WL 3190589, at *4 (E.D. Cal. Nov. 14, 2025) ("[W]hen ICE revokes the [OSUP] of a noncitizen who has been ordered removed to effectuate that noncitizen's removal, it is [ICE's] burden to show a significant likelihood that the alien may be removed.") (citation modified).

**3.**   *Petitioner's removal is not likely in the reasonably foreseeable future.* Respondents fail here to carry their burden. Moreover, even if the Court were convinced Petitioner must bear the initial burden to establish good cause, Petitioner has carried that burden here.

7

ICE-ERO submitted third-country removal requests to Brazil, Guatemala, and Colombia, and as of January 23, 2026, all three requests remained pending. Tr. 2:18-3:14; *see also* ERO Decl. ¶¶ 16, 20. Indeed, as of early March, the Court has no information indicating any change with respect to those requests. Meanwhile, the mere existence of outstanding third-country requests is insufficient to show that Petitioner is likely to be removed in the reasonably foreseeable future. *See Trejo*, 807 F.Supp.3d at 706-07; *see also Medellin Martinez v. Bondi, et al.*, No. 5:25-cv-1319-OLG, Order Granting Petition for Writ of Habeas Corpus, at 5 (W.D. Tex. Nov. 21, 2025). District Courts in this Circuit have held that the Government's burden to furnish evidence demonstrating that removal is likely in the reasonably foreseeable future is not met by pending requests for travel documents alone. *See, e.g.*, *Trejo*, 807 F.Supp.3d at 706-07.

There is therefore little merit to Federal Respondents' contention that "until the countries" to whom pending travel document requests have been submitted "refuse to issue a travel document to Petitioner, there is no reason to believe that they is [sic] unlikely to accept him for removal." Response at 5. Federal Respondents fail to meet their burden.

Moreover, even if Petitioner were to bear the burden to show good cause, he has carried it, and Respondents have failed to rebut it. As a general matter, "[v]ery few people subject to withholding of removal or CAT relief are removed from the United States." *Puertas-Mendoza v. Bondi et al*, No. 5:25-cv-00890-XR, 2025 WL 3142089, at *3 (W.D. Tex. Oct. 22, 2025). "And that is not simply a matter of United States policy—foreign governments 'routinely deny' requests to receive people who lack a connection to the would-be receiving country." *Id.*

Here, Petitioner demonstrated he cannot be removed to his country of origin, based on his withholding of removal pursuant to CAT, *see* Pet. ¶¶ 1, 16, and ICE has not identified a receiving country or made any "tangible progress in securing travel documents." *Id.* ¶ 35. Petitioner also

8

points to the absence of any "indication that the Government attempted to remove Petitioner during the [eleven] years between his [reinstated] order of removal and his detention in 2025[,]" to support his contention that he is not likely to be removed in the reasonably foreseeable future. *See Puertas-Mendoza*, 2025 WL 3142089, at \*4; *see also* Pet. ¶ 38 ("Petitioner shows that the government had years to execute the final order and failed to do so.").

And, finally, due to apparent oversight, ICE did not notify Petitioner that he was detained pursuant to revocation of his OSUP or provide the reasons for his revocation until December 17, 2025—more than five months after his detention. *See* ERO Decl. ¶¶ 11, 12. It appears that if changed circumstances truly made quick removal more likely, ICE would have explained this to Petitioner at any point during these five months. Instead, Respondents waited until Petitioner sought relief from this Court before they provided Petitioner with any of the process required under the applicable statutory and regulatory scheme.

"Taken together, the rareness of removal to a third country, . . . the long period of time between [Petitioner's] removal order and his detention, the initial lack of any explanation for [Petitioner's] detention in 2025, and the cursory explanation ultimately provided show that [Petitioner's] removal is not reasonably foreseeable." *See Puertas-Mendoza*, 2025 WL 3142089, at \*4; *see also Villanueva v. Tate*, No. 4:25-cv-3364, 2025 WL 2774610, at \*10 (S.D. Tex. Sep. 26, 2025) (granting *Zadvydas* relief where detainee had withholding removal to Mexico, Government had not tried to lift withholding order or to remove him for eight years, and no changed circumstances made removal reasonably foreseeable). In short, "Respondents have not demonstrated that any potential third country is likely to accept Petitioner." *See Medellin Martinez*, 5:25-CV-1319-OLG, Order Granting Petition for Writ of Habeas Corpus, at 5. "In the absence of

such evidence, Respondents have failed to meet their burden[,]" *id*., and Petitioner is entitled to habeas relief under § 2241.

"The Court is mindful that the government has the right to enforce [Petitioners]'s Order of Removal. But the government may not detain [Petitioner] for an indefinite and undetermined period of time while it tries to effect that removal when the circumstances are such that his removal is not reasonably likely in the foreseeable future. Such an action violates the Due Process Clause, as explained in *Zadvydas*." *See Villanueva*, 2025 WL 2774610, at \*10. Thus, Petitioner should be released. *See Zadvydas*, 533 U.S. at 699.

**C.      The Court Need Not Address Petitioner's Argument That Revocation of His OSUP Contravened Applicable Regulations and Violated Due Process.**

Petitioner alleges as predicates of a procedural due process claim that the Government violated its own regulations concerning (1) the revocation of his OSUP and (2) his right to challenge the revocation. Pet. ¶ 47 ("ICE has failed to follow its own regulation requiring notification and reasons for its revocation of supervision, and affording him an opportunity to respond to the alleged violation.") (citing 8 C.F.R. § 241.4). Because the Court directs Petitioner's release pursuant to his *Zadvydas* claim, this claim need not be addressed.

**D.      Petitioner Should Be Released on Substantially Similar Conditions as in His Prior OSUP.**

Having determined that Respondents violated Petitioner's right to due process, the Court considers the scope of appropriate relief. Federal Respondents contend that the remedy for a due process violation is substitute process, which was afforded here via the admittedly belated informal interview on December 17, 2025. Response at 6; Tr. 8:12-21. But this argument addresses only Petitioner's second argument, about the failure to follow regulations when revoking his OSUP. It doesn't speak to the *Zadvydas* claim. Relief for such a claim in these circumstances is release. *See*

10

*Zadvydas*, 533 U.S. at 701 (stating that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future").

The relief requested by Petitioner is release from custody, on his own recognizance or under parole, a low bond, or reasonable conditions of supervision. *See* Pet. at 12-13. Federal Respondents contemplated the possibility of such relief on the record at the January 29, hearing. *See* Tr. 12:4-13 (discussing possible release on conditions subject to re-detention and removal should a suitable destination country be identified and removal to that country be approved). Accordingly, the Court recommends Petitioner be released subject to substantially similar conditions as were contained in his prior OSUP.

Finally, Petitioner requests attorney's fees under the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412(d)(1)(A). Because fees under the EAJA are not available in habeas corpus proceedings like this one, that request should be denied. *See Barco v. Witte*, 65 F.4th 782 (5th Cir. 2023).

### Conclusion and Recommendation

For the reasons discussed above, it is recommended that Petitioner's Petition for Writ of Habeas Corpus, Dkt. No. 1, be **GRANTED IN PART** and Respondents be ordered to "**RELEASE** Petitioner under conditions substantially similar to those contained in his prior OSUP." *See Medellin Martinez*, 5:25-cv-1319-OLG, at 6; *see also Escalante*, 2025 WL 2206113, at *4 (ordering that re-detained petitioner be released "subject to an order of supervision in accordance with 8 C.F.R. § 241.5"). Any other relief not specifically recommended herein should be **DENIED**. In light of the foregoing, and upon the District Judge's adoption of this

recommendation, Petitioner's Motion for Temporary Restraining Order, Dkt. No. 4, and Motions to Expedite, Dkt. Nos. 6 & 14, should be **MOOT**.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within seven (7) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from

12

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)

(en banc).

    **IT IS SO ORDERED**.

    **SIGNED** this 5th day of March, 2026.

                                      RICHARD B. FARRER
                                      UNITED STATES MAGISTRATE JUDGE